[No. F028743. Fifth Dist. Dec. 10, 1998.]

MICHAEL A. FLORIO et al., Plaintiffs and Respondents, v.
B. PECK LAU, Individually and as Cotrustee, etc., et al., Defendants and
Appellants.

638

## Counsel

Emerich, Pedreira & Fike and David A. Fike for Defendants and Appellants.

Kloster, Ruddell, Hornburg, Cochran, Stanton & Smith and Glenn A. Stanton for Plaintiffs and Respondents.

## Opinion

**VARTABEDIAN, J.**—This appeal raises a statutory interpretation issue of first impression, involving the interplay between Code of Civil Procedure section 726, which concerns deficiency judgments after judicial foreclosure sales of real property, and California Uniform Commercial Code section 9501, subdivision (4), the so-called "mixed collateral statute." We must resolve the following question: When a debtor secures a single obligation with "mixed collateral" (that is, with a combination of real and personal property) and when the secured creditor would otherwise be entitled to a deficiency judgment upon default, may the debtor successfully defend under Code of Civil Procedure section 726, which requires creditors to seek deficiency judgments within three months after a real property foreclosure sale, even if the personal property collateral has not yet been sold?

For the reasons that follow, we find the defense inapplicable and affirm the judgment.

### Facts and Proceedings

In connection with a lawsuit unrelated to this appeal, appellants B. Peck Lau, M.D., and Judith Lau (and others) entered into a stipulated settlement with respondents Michael A. Florio, M.D., Mary Ann Florio, Hal D. McConnaughey, M.D., and Claire McConnaughey, under which appellants agreed

to pay to a creditor known as MetLife the sum of $280,000, plus interest. Respondents reserved the right to pay appellants' obligation to MetLife if appellants defaulted and then to seek reimbursement. Appellants secured performance of their obligation with three types of security: real property in Fresno, shares of stock in the Visalia Racquet Club, and appellants' interest in the partnership M.D. Properties. Appellants defaulted. Respondents paid MetLife and sued appellants, seeking judicial foreclosure of all the security. On June 17, 1996, the court granted a judgment finding appellants owed respondents $350,000 plus interest, ordering foreclosure sales, finding respondents were entitled to a deficiency judgment, and reserving jurisdiction to fix the amount of the deficiency when the security had been sold.

Thereafter, the security was disposed of as follows: The real property was sold at a sheriff's sale on October 9, 1996, for $50,000. The stock was sold back to Visalia Racquet Club for $83,000. An attempt was also made to sell the partnership interest in M.D. Properties at a sheriff's sale on December 10, 1996; however, no one bid at the sale.

On March 10, 1997, respondents filed a motion for a deficiency judgment. Appellants responded by asserting the motion was barred by Code of Civil Procedure section 726, which requires such motions to be brought within three months of the date of a real property foreclosure sale. Appellants argued respondents were barred because they filed their motion five months after the real estate foreclosure sale. In arguing Code of Civil Procedure section 726 applied, appellants also relied upon California Uniform Commercial Code section 9501, subdivision (4)(b)(i), known as the "mixed collateral statute." California Uniform Commercial Code section 9501, subdivision (4)(a)(i) permits a secured party to "Proceed, in any sequence, (1) in accordance with the secured party's rights and remedies in respect of real property as to the real property security, and (2) in accordance with this chapter [i.e., div. 9, ch. 5 of the Cal. U. Com. Code] as to the personal property or fixtures." According to appellants, this statute requires a mixed collateral creditor who forecloses on real property to abide by *all* procedures relating to foreclosure of real property. Since Code of Civil Procedure section 726 applies to real property foreclosure, and since respondents had foreclosed upon real property, California Uniform Commercial Code section 9501, subdivision (4)(b)(i) mandated application of Code of Civil Procedure section 726.

Respondents countered that their motion was timely. First, they argued Code of Civil Procedure section 726 was wholly inapplicable, because it applies to obligations secured *only* by real property, not to obligations secured by mixed collateral, and the mixed collateral statute imposed no

time limit on motions for deficiency judgments. Alternatively, they argued even if the three-month period in Code of Civil Procedure section 726 applied, it should not necessarily begin to run from the date of the real property foreclosure sale but, rather, from the date on which the last item of mixed collateral (whether real or personal property) was sold. In this case, respondents asserted, the motion was timely because less than three months had elapsed since the attempted sale of the partnership interest.

The court took the matter under submission. In its order filed nunc pro tunc April 24, 1997, the court accepted respondents' alternative argument, holding Code of Civil Procedure section 726's three-month limitations period applies to mixed collateral but also holding the three-month period does not begin to run until the date of sale of the last item of collateral. Thus, respondents' motion, filed less than three months after the attempted sale of the partnership interest, was timely. The court entered judgment against appellants on April 28, 1997, in the amount of $252,256.62. Appeal is taken from that judgment.

DISCUSSION

*Standard of Review*

The only issue on appeal is interpretation of a statute, which is a legal question. (*California Teachers Assn.* v. *San Diego Community College Dist.* (1981) 28 Cal.3d 692, 699 [170 Cal.Rptr. 817, 621 P.2d 856].) We review legal questions de novo. (*Berkeley Center for Independent Living* v. *Coyle* (1996) 42 Cal.App.4th 874, 878 [50 Cal.Rptr.2d 39].)

*Overview—History and Purpose of Mixed Collateral Rules*

We begin our evaluation of this case with a brief overview of the law applicable to obligations secured with mixed collateral. In 1985, the Legislature amended the California Uniform Commercial Code to add section 9501, subdivision (4), the so-called "Mixed Collateral Statute." (Stats. 1985, ch. 974, § 1, p. 3078 & ch. 1368, § 12, p. 4860.) Rather than quote herein the statute in its entirety, we will refer to relevant portions within our discussion of particular points.

"The Mixed Collateral Statute is the most recent legislative expression of a principle inherent in California law since the 1963 adoption of the [Uniform Commercial Code]. The [Uniform Commercial Code] governs the exercise of remedies as to personal property collateral, and real property security law governs as to realty collateral." (Hirsch et al., *The U.C.C. Mixed*

*Collateral Statute—Has Paradise Really Been Lost?* (1988) 36 UCLA L.Rev. 1, 67 (hereafter Hirsch).)

Members of the statute's drafting committee explained that mixed collateral situations trigger the application of Civil Code and Code of Civil Procedure sections governing real property foreclosures and also of California Uniform Commercial Code sections relating to personal property foreclosures. The committee acknowledged that, before 1985, "the interplay between Division 9 [of the Commmercial Code] and the real property remedies provisions of the Civil Code and the Code of Civil Procedure in mixed collateral situations [was] not as clear as it ought to be." (Rep. of the U. Com. Code Com. of the State Bar of Cal. on Proposed Amend. to Cal. U. Com. Code, § 9501(4) (Dec. 7, 1984) reprinted in Hirsch, *supra*, 36 UCLA L.Rev. at p. 70 (hereafter U.C.C. Report).) Thus, the amendments embody the Legislature's attempt at clarifying this statutory interplay so as to "minimize the interference with the rights and remedies of the secured party vis-à-vis the personal property collateral arising from the fact that the secured party also holds real property collateral, while at the same time not expanding the rights and remedies of the secured party vis-à-vis the real property collateral simply because he also holds personal property collateral." (U.C.C. Report, *supra*, at p. 72; see also *Aspen Enterprises, Inc.* v. *Bodge* (1995) 37 Cal.App.4th 1811, 1817 [44 Cal.Rptr.2d 763].)

California Uniform Commercial Code section 9501 offers mixed collateral creditors some options. One option is to include in a real property foreclosure sale some or all of the personal property collateral. Under this option, realty and personalty are sold as a unit and the foreclosure is governed entirely by statutes applicable to real property collateral. (Cal. U. Com. Code, § 9501, subd. (4)(a)(ii).) Known as a "unified sale," this option can be chosen only when the real and personal property are closely enough related that selling them as a unit is a commercially reasonable choice. (*Aspen Enterprises, Inc.* v. *Bodge, supra*, 37 Cal.App.4th at p. 1819.) For example, a creditor might reasonably hold a unified sale to foreclose upon a hotel and its furnishings and fixtures. In contrast, a creditor could not reasonably hold a unified sale to dispose of a truckload of tires and a single family residence. (*Ibid.*)

When a creditor holds security interests in completely unrelated real and personal property collateral (like tires and a house) the creditor must proceed under California Uniform Commercial Code section 9501, subdivision (4)(a)(i) which states:

"(a) The secured party may . . . .

"(i) Proceed, in any sequence, (1) in accordance with the secured party's rights and remedies in respect of real property as to the real property security, and (2) in accordance with this chapter as to the personal property or fixtures."

Section 9501, subdivision (4)(b)(i) explicitly addresses the interplay between real property rights and remedies and rights and remedies under the California Uniform Commercial Code when there is no unified sale. It states: "(b)(i) Except as otherwise provided in paragraph (c), *provisions and limitations of any law respecting real property and obligations secured by an interest in real property* or an estate therein, including, but not limited to, Section 726 of the Code of Civil Procedure, provisions regarding acceleration or reinstatement of obligations secured by an interest in real property or an estate therein, prohibitions against deficiency judgments, limitations on deficiency judgments based on the value of the collateral, limitations on the right to proceed as to collateral, and requirements that a creditor resort either first or at all to its security, *do not in any way apply to either (1) any personal property or fixtures* other than personal property or fixtures as to which the secured party has proceeded or is proceeding under subparagraph (ii) of paragraph (a) [i.e., secured party is proceeding by way of a 'unified sale' discussed above], *or (2) the obligation."* (Italics added.) So, while the Legislature does not burden a creditor's rights in personal property collateral with procedures applicable to real property collateral, neither does it want to diminish a debtor's protections as to real property collateral simply because the debtor has also secured the same obligation with personal property. The drafters of the mixed collateral statute expected it to serve as a " 'treaty' between the provisions of the real property and personal property foreclosure laws" and they believed the statute "establishe[d] how these two systems are to interact in the mixed collateral situation." (Hirsch, *supra*, 36 UCLA L.Rev. at p. 13.)

However, shortly after the statute's enactment, Professor John Hetland, an expert on the state's mixed collateral rules,[1] predicted several practical difficulties raised by the new rules. (See Hetland & Hansen, *The "Mixed Collateral" Amendments to California's Commercial Code—Covert Repeal of California's Real Property Foreclosure and Antideficiency Provisions or Exercise in Futility?* (1987) 75 Cal.L.Rev. 185, 208 (hereafter Hetland).) One of those difficulties was the very problem confronting us in this appeal,

---

[1] A committee report on amendments to the mixed collateral statute states: "One of the leading California academic authorities on the mixed collateral rule is Professor John Hetland of the University of California, Berkeley School of Law. Both the author and the California Bankers Association are using him as support for their conflicting positions over [segments of the proposed amendments.]" (See Assem. Com. on Admin. of Justice, Rep. on Assem. Bill No. 2734 (1991-1992 Reg. Sess.) May 5, 1992, com. 4.)

namely, how to ensure, *as a practical matter*, that real property rules apply to real property and personal property rules apply to personal property when both types of collateral secure a single obligation.[2] Professor Hetland lamented: "Moreover, in order to make the amendments work at all in the true mixed collateral situation, the courts would be compelled to invent, without legislative guidance, an entirely new and complex body of substantive and procedural law specifying when and how an originally unitary debt secured by real and personal property can be fractionalized after default and for purposes of enforcement. The creation of such a scheme would run contrary to virtually every judicial instinct and principle articulated—or evident—in the real property security and mixed collateral case law of the past fifty years." (Hetland, *supra*, at pp. 214-215.) Professor Hetland advised courts to solve the problem by applying real property rules whenever *any* real property is part of the collateral mix. (*Id.* at p. 216.) This suggestion was severely rebuffed however, in Hirsch, which was co-authored by two members of the mixed collateral statute drafting committee. According to Hirsch, the mixed collateral statute was designed to prevent just such automatic default to real property rules. Hirsch states: "[T]he issue is no longer whether real property law and the U.C.C. are to be reconciled through the 'hegemony of the real property enforcement scheme' advocated by the Hetland article or through the much more balanced approach in the Mixed Collateral Statute. The legislature, in enacting the statute, has resolved that question in favor of the latter approach. The focus now should be on the statute itself." (Hirsch, *supra*, 36 UCLA L.Rev. at pp. 14-15.) Nonetheless, Professor Hetland was correct in his assessment that the Legislature's mixed collateral scheme left unanswered certain procedural questions as to precisely how to accomplish the Legislature's goal of ensuring real property rules would apply only to real property collateral and personal property rules would apply only to personal property collateral when both types secure one obligation. The instant appeal asks us to fill the particular gap that pertains to a mixed collateral creditor who seeks a deficiency judgment.

California's real property deficiency judgment rules differ substantially from its California Uniform Commercial Code rules. Under the California Uniform Commercial Code, deficiency judgments are favored, so long as the creditor forecloses on the collateral in good faith and in a commercially

---

[2]In fact, Professor Hetland listed as one future problem with the mixed collateral statutes the *precise issue* now on appeal. In a series of rhetorical questions, he asks, "[B]y what procedure is the remaining portion of [a] debt to be determined [after a foreclosure sale]? Will it be a judicial proceeding similar to that leading up to a deficiency judgment, i.e., a motion to determine the amount in excess of the fair value of all of the security, which is the maximum for any deficiency judgment? *Is this determination subject to the strict three-month limitations period within which the deficiency judgment procedure must be commenced?*" (Hetland, *supra*, 75 Cal.L.Rev. at p. 208, italics added, fns. omitted.)

reasonable manner, after providing proper notice of sale. (Cal. U. Com. Code, § 9504, subd. (2).)[3] In contrast, under real property statutes, deficiency judgments are commonly limited or prohibited. For instance, creditors cannot obtain deficiency judgments for purchase money transactions or after a nonjudicial foreclosure sale pursuant to a deed of trust. (See Code Civ. Proc., §§ 580b, 580d.)

Deficiency judgments generally *are* available after a *judicial* real property foreclosure sale, but with some restrictions. (Code Civ. Proc., § 726.) Under Code of Civil Procedure section 726, the judicial foreclosure statute, a deficiency judgment must be sought within three months of the foreclosure sale and must be limited to the difference between the debt and the "fair value" of the security, as determined by the court after a hearing. The statute reads: "(b) . . . In the event that a deficiency is not waived or prohibited and it is decreed that any defendant is personally liable for the debt, then upon application of the plaintiff filed at any time within three months of the date of the foreclosure sale and after a hearing thereon at which the court shall take evidence and at which hearing either party may present evidence as to the fair value of the real property or estate for years therein sold as of the date of sale, the court shall render a money judgment against the defendant or defendants for the amount by which the amount of the indebtedness with interest and costs of levy and sale and of action exceeds the fair value of the real property or estate for years therein sold as of the date of sale. In no event shall the amount of the judgment, exclusive of interest from the date of sale and of costs exceed the difference between the amount for which the real property or estate for years therein was sold and the entire amount of the indebtedness secured by the mortgage or deed of trust." Thus, if the court

---

[3]California Uniform Commercial Code section 9504, subdivision (2) provides in pertinent part:

"(b) If the security interest secures an indebtedness, *the debtor is liable for any deficiency* unless otherwise agreed or otherwise provided in the Retail Installment Sales Act, and in particular Section 1812.5 of the Civil Code or any other statute, but only (i) if the debtor was given notice, if and as required by subdivision (3), of the disposition of the collateral in accordance with subdivision (3), and the disposition of the collateral by the secured party pursuant to this section was conducted in good faith and in a commercially reasonable manner, or (ii) except for secured transactions entered by a debtor primarily for personal, family, or household purposes, as provided in paragraph (c).

"(c) If the secured party has provided notice to the debtor pursuant to subdivision (3), if so required, but has not proceeded in a commercially reasonable manner in the disposition of the collateral, the debtor is liable, subject to paragraphs (b) and (d), for any deficiency only if the balance of the indebtedness immediately before the disposition exceeds the amount that the secured party establishes would have been realized had the disposition of the collateral by the secured party pursuant to this section been conducted in conformity with the conditions set forth in clause (i) of paragraph (b), and the liability is limited to the excess. This paragraph does not apply to secured transactions entered by a debtor primarily for personal, family, or household purposes." (Italics added.)

determines the "fair value" of the foreclosed real property collateral is more than the amount realized at the foreclosure sale, it will award the creditor a deficiency judgment only for the difference between the debt and the fair value, rather than for the difference between the debt and the actual sales price. (*Luther Burbank Savings & Loan Assn.* v. *Community Construction, Inc.* (1998) 64 Cal.App.4th 652, 654 [75 Cal.Rptr.2d 367].) Real property fair value rules exist to protect debtors from overreaching creditors who might purchase their own security for unrealistically low credit bids in order to be able to obtain a higher personal judgment against the debtor. (*Roseleaf Corp.* v. *Chierighino* (1963) 59 Cal.2d 35, 40 [27 Cal.Rptr. 873, 378 P.2d 97].) In contrast, while the California Uniform Commercial Code provides some fair value protection under its requirements for commercially reasonable sales, it does not impose on a court the automatic requirement of holding a fair value hearing as part of the process of ruling on a deficiency judgment. (Compare Code Civ. Proc., § 726 with Cal. U. Com. Code, § 9504, subd. (2)(b), (c).)

■ To summarize, a creditor whose obligation is secured by personal property generally is entitled to a deficiency judgment for the full difference between the debt and the price obtained from the sale of the personal property (i.e., no fair value limitation). Moreover, the California Uniform Commercial Code specifies no particular time limit within which the creditor must seek the judgment. In contrast, a creditor whose obligation is secured by real property may obtain a deficiency judgment only for the difference between the debt and the realty's fair value and is barred from obtaining the judgment unless he or she brings a motion within three months from the date of the foreclosure sale.

With this dichotomy in mind, we turn to our task of deciding what rules the Legislature intended would apply when the debt is secured by both real property and personal property.

*Procedure for Obtaining Deficiency Judgments After Sale of Mixed Collateral*

■ Appellants argue Code of Civil Procedure section 726's[4] three-month statute of limitations must apply here because part of the collateral

---

[4]We dispose summarily of respondents' contention appellants waived their arguments under Code of Civil Procedure section 726 because their opposition papers below erroneously cited to Code of Civil Procedure section 580a. Code of Civil Procedure section 580a governs nonjudicial foreclosure sales; Code of Civil Procedure section 726 governs judicial foreclosure sales. At the hearing, appellants clarified for the court that their arguments pertained to Code of Civil Procedure section 726, not Code of Civil Procedure section 580a. The court's subsequent order interprets Code of Civil Procedure section 726, not Code of Civil Procedure

was real property and, under California Uniform Commercial Code section 9501, subdivision (4)(a)(i), real property rules must apply to real property collateral. Appellants sidestep the pivotal problem, however, which is that Code of Civil Procedure section 726 cannot be applied *in its entirety* to a mixed collateral situation without running afoul of the Legislature's stated purpose in enacting the mixed collateral statute. While appellants correctly contend the Legislature intended real property rules to govern real property, appellants ignore the equally strong legislative intention to apply personal property rules to personal property and to *avoid* having real property rules apply to any personal property (except in the case of a unified sale).[5] As noted earlier, the California Uniform Commercial Code imposes no time limit on motions for deficiency judgments relating to personal property collateral. If Code of Civil Procedure section 726's three-month time bar is applied in a mixed collateral situation, then Code of Civil Procedure section 726's real property rules will by necessity be operating not only upon real property collateral but also upon personal property collateral.

The trial court attempted to solve the problem by interpreting Code of Civil Procedure section 726 broadly. The court's minute order states: "Where a defendant is held to be personally liable for a deficiency, as in this case, CCP § 726 provides that Plaintiff can apply for money judgment in the amount of the deficiency 'within three months of the date of the foreclosure sale.' There is no requirement here, or elsewhere that the application be made within three months of the sale of real property. Where, as here, there is both real and personal property available to satisfy the obligation at issue, the application should not be made until after the completion of all sales. Plaintiff made application within 90 days of the sale of the last available personal property and has therefore, complied with the requirements of the law."

Appellants contend the court erred in interpreting Code of Civil Procedure section 726 to mean a creditor must apply for a deficiency judgment within three months after the sale of the last item of collateral, because the plain language of Code of Civil Procedure section 726 covers only actions on real property. We agree Code of Civil Procedure section 726 applies to real property actions only.

One basic rule of statutory construction is that courts must look first to the usual, ordinary meaning of the statutory language in interpreting a

---

section 580a. Appellants' arguments concerning Code of Civil Procedure section 726 are properly before us.

[5]Both parties agree the sale here was not and, given the nature of the collateral, could not have been unified.

statute. (*California Teachers Assn. v. San Diego Community College Dist.,* *supra,* 28 Cal.3d at p. 698.) We therefore turn to the words used in Code of Civil Procedure section 726. Subdivision (a) of Code of Civil Procedure section 726 speaks of "one form of action for the recovery of any debt . . . secured by mortgage *upon real property* . . . , which action shall be in accordance with the provisions of this chapter." (Italics added.) It continues: "[i]n the action, the court may . . . direct the *sale of the encumbered real property. . . .*" (*Ibid.,* italics added.)

Code of Civil Procedure section 726, subdivision (b) continues to refer to real property: "The decree for the foreclosure of a mortgage . . . *secured by real property* . . . shall declare the amount of the indebtedness . . . and . . . shall determine the personal liability of any defendant for the payment of the debt secured by the mortgage . . . and shall name the defendants against whom a deficiency judgment may be ordered following the proceedings . . . in this section. . . . [U]pon application of the plaintiff filed at any time within three months of the date of *the* foreclosure sale and after a hearing thereon at which the court shall take evidence . . . as to the fair value *of the real property* . . . *therein sold* as of the date of sale, the court shall render a money judgment . . . for the amount by which the [debt] exceeds the fair value of the *real property* . . . *therein sold. . . .*" (Italics added.)

A sensible reading of the statute is that "*therein* sold" means "sold at the foreclosure sale." The subject of the foreclosure sale to which the statute repeatedly refers is "real property." If "*the*" foreclosure sale to which the statute refers is *the sale at which the real property is sold,* then Code of Civil Procedure section 726 plainly requires a creditor foreclosing on real property to move for a deficiency judgment within three months after the date of the real property foreclosure sale. Nothing in the statute suggests the three-month time period relates in any way to the sale of personal property collateral securing the same obligation as the real property collateral. Thus, while the trial court designed a sensible practical solution to the problem posed by Code of Civil Procedure section 726's three-month requirement when it ruled the three months did not begin to run until the last item of collateral (whether real or personal property) was sold, we cannot adopt this interpretation of Code of Civil Procedure section 726, because "In the construction of a statute or instrument, the office of the Judge is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted, or to omit what has been inserted; and where there are several provisions or particulars, such a construction is, if possible, to be adopted as will give effect to all." (Code Civ. Proc., § 1858.) It was improper to insert into Code of Civil Procedure section 726 something the Legislature had omitted. The time limit specified in Code of Civil Procedure

section 726 runs from the date of a real property foreclosure sale and bears no relationship to the time of personal property foreclosure sales.

Even though we agree with appellants' contention Code of Civil Procedure section 726 by its terms applies only to real property foreclosure sales and not to sales of personal property collateral, the question still remains whether Code of Civil Procedure section 726, subdivision (b) applies *at all* when both types of collateral secure the same obligation. Here is the dilemma: The Legislature intended for real property rules to apply to real property and personal property rules to apply to personal property. Subdivision (b) of Code of Civil Procedure section 726 is exclusively a real property rule. If it is not applied to mixed collateral, then, to the extent the collateral includes real property, a real property rule is not being applied to real property collateral. On the other hand, if this statute *is* applied to mixed collateral, then a real property rule is being applied not only to real property but also to personal property. Either application appears, in some measure, to violate legislative purpose.

In resolving the conflict, we may find some guidance in Code of Civil Procedure section 1859, which states: "In the construction of a statute the intention of the Legislature, and in the construction of the instrument the intention of the parties, is to be pursued, if possible; and when a general and particular provision are inconsistent, the latter is paramount to the former. So a particular intent will control a general one that is inconsistent with it."

In the present context involving mixed collateral, the mixed collateral statute is more "particular" to the case than Code of Civil Procedure section 726, especially since, as noted above, it was designed to mediate between real property statutes and the California Uniform Commercial Code. California Uniform Commercial Code section 9501, subdivision (4)(b)(i) is to be the segment of the mixed collateral statute most helpful in resolving the precise issue before us. It states: "[P]rovisions and limitations of any law respecting real property and obligations secured by an interest in real property . . . including, but not limited to, Section 726 of the Code of Civil Procedure, provisions [relating to a variety of specific topics] . . . do not in any way apply to either (1) any personal property or fixtures [not being sold at a unified sale] or (2) the obligation." (*Ibid.*)

Respondents urge us to interpret this section as follows: The three-month limitations period in Code of Civil Procedure section 726 is a "provision or limitation of law" respecting obligations secured by an interest in real property. The statute states this type of limitation "do[es] not in any way apply to . . . the obligation." (Cal. U. Com. Code, § 9501, subd. (4)(b)(i).)

"The obligation" is the debt which the mixed collateral secured, reduced by the amount realized from sales of the collateral or, in other words, it is the amount of money to which the creditor is entitled as a deficiency judgment. Accordingly, the three-month limitation does not apply in a mixed collateral context.

This presents a reasonable interpretation of California Uniform Commercial Code section 9501, subdivision (4)(b)(i) itself, as well as a sensible interpretation of the interplay between subdivision (4)(b)(i) and Code of Civil Procedure section 726. Moreover, this construction achieves a result consonant with the legislative purpose, which we are bound to ascertain and effectuate whenever possible. (*California Teachers Assn.* v. *San Diego Community College Dist.*, *supra*, 28 Cal.3d at p. 698.) The Legislature intended not to put extra burdens on creditors secured by personal property simply because they had also accepted security interests in real property to secure the same obligation. If Code of Civil Procedure section 726's three-month time limit applies to mixed collateral, then all mixed collateral creditors would have to move for deficiency judgments within three months of the sale of real property even if the personal property collateral remained unsold, in order to avoid losing their right to a personal judgment. But the court cannot determine the amount of a deficiency until all collateral is sold, since by definition a deficiency judgment is a personal judgment for the difference between the price realized for collateral and the entire obligation (reduced, sometimes, by "fair value" limitations). If the motion for deficiency judgment had to be brought before the personal property collateral were sold, a second hearing would have to be held later.

Nothing in the statutory language suggests the Legislature intended to force a mixed collateral creditor to seek a deficiency judgment before he sells all his collateral. Furthermore, such a result would contravene the public policy of promoting judicial efficiency by requiring two hearings, rather than one, after all collateral had been sold. (See, e.g., *Lucido* v. *Superior Court* (1990) 51 Cal.3d 335, 366 [272 Cal.Rptr. 767, 795 P.2d 1223, 2 A.L.R.5th 995] ["judicial economy is promoted by minimizing repetitive litigation"].)

Nor would it promote legislative intent for a creditor to be forced to sell all personal property collateral within three months of the real property foreclosure sale just so the amount of the deficiency could be determined at the real property fair value hearing. First, California Uniform Commercial Code section 9501, subdivision (4)(a)(i) suggests the Legislature did not wish to impose *any* particular sequence of sales upon a creditor, since it states a secured party may "[p]roceed *in any sequence*. . . ." (Italics added.)

Furthermore, personal property sales must be conducted under standards of "commercial reasonableness." (Cal. U. Com. Code, § 9504, subd. (2)(b).)

We could imagine situations in which the timing of a sale could impact on the sale's commercial reasonableness. For instance, certain seasonal goods (e.g., fans, snow shovels, bathing suits, down vests) might be readily salable only during certain months. A creditor forced to sell goods at a commercially disadvantageous time so as to comply with Code of Civil Procedure section 726, could find itself penalized by the "fair value" component of the California Uniform Commercial Code, which permits a debtor to subtract from the deficiency the amount that could have been obtained had the sale been commercially reasonable. (Cal. U. Com. Code, § 9504, subd. (2)(c).) Alternatively, if the creditor waited until the most commercially reasonable season, but that season did not coincide with Code of Civil Procedure section 726's three-month limitation period, the creditor could risk losing the right to any deficiency, even though it would have been entitled to one under the California Uniform Commercial Code. This result runs afoul of the drafters' intent to "minimize the interference with the rights and remedies of the secured party vis-à-vis the personal property collateral arising from the fact that the secured party also holds real property collateral, . . ." (U.C.C. Report, *supra*, at p. 72.)

Nonetheless, appellants suggest that a further reading of provisions that follow in California Uniform Commercial Code section 9501, subdivision (4) persuades that Code of Civil Procedure section 726, subdivision (b), applies to a mixed collateral setting. In particular, they point to two provisions within California Uniform Commercial Code section 9501. First, subdivision (4)(b)(ii) states in relevant part, "Pursuant to, but without limiting subparagraph (i), in the event that an obligation secured by personal property or fixtures would otherwise become unenforceable by reason of Section 726 of the Code of Civil Procedure . . . , the obligation shall nevertheless remain enforceable . . . against personal property or fixtures securing the obligation . . . ." Second, subdivision (4)(c)(vii) provides that if the secured party runs afoul of the legal requirements of resorting to the security before other property, "paragraph (b) does not prevent . . . the debtor's assertion of the subsequent unenforceability of the obligation except to the extent that the obligation is preserved by subparagraph (ii) of paragraph (b)."

Appellants contend these provisions "together recognize that an obligation may otherwise become unenforceable under the real property laws, and provide that in such case, the obligation is thereafter preserved only insofar as it may be satisfied from any personal property securing the obligation."

In addition to the reasoning already detailed, we disagree based on express statutory language. California Uniform Commercial Code section 9501,

subdivision (4)(b)(ii), qualifies its applicability in the following respects: it functions "without limiting subparagraph (i)," and it covers situations where the obligation would "otherwise" become unenforceable by reason of Code of Civil Procedure section 726. "Otherwise" can only reasonably mean for reasons other than those stated in California Uniform Commercial Code section 9501, subdivision (4)(b)(i) as not affecting the obligation. Insofar as subdivision (4)(b)(i) essentially exempts personal property collateral and the remaining obligation from provisions and limitations of any law pertaining to security transactions in real property, including Code of Civil Procedure section 726 and the following specified laws: "provisions regarding acceleration or reinstatement of obligations secured by an interest in real property or an estate therein, prohibitions against deficiency judgments, limitations on deficiency judgments based on the value of the collateral, limitations on the right to proceed as to collateral, and requirements that a creditor resort either first or at all to its security" (Cal. U. Com. Code, § 9501, subd. (4)(b)(i)), we do have some difficulty imagining what real property security provisions would "otherwise" render the remaining obligation unenforceable. At oral argument, respondent suggested that the provision of Code of Civil Procedure section 726, subdivision (a), that "[t]here can be be but one form of action for recovery," provides such an instance of the remaining obligation being otherwise uneforceable. However, this point is not central to our interpretation of California Uniform Commercial Code section 9501, subdivision (4)(b)(i), and we need not conjure up how subdivision (4)(b)(ii) would operate hypothetically. It is enough to say that the express terms are not altered by the language in subdivision (4)(b)(ii).

Similarly, California Uniform Commercial Code section 9501, subdivision (4)(c)(vii),does not alter the plain meaning of subdivision (4)(b)(i) because the debtor's assertion of unenforceability of the obligation is not allowed "to the extent the obligation is preserved by subparagraph (ii) of paragraph (b)."

Appellants admit the dollar amount of a deficiency cannot be determined until all collateral is sold, but they suggest creditors should be required to adhere to Code of Civil Procedure section 726's three-month timetable just so the court can hold a fair value hearing concerning the real property. The actual decision on the amount of the deficiency judgment could then be deferred until the rest of the collateral was sold. This argument presumes that the fair value rules of Code of Civil Procedure section 726 would apply in mixed collateral situations—a question not before us in this appeal. Assuming, without deciding, that Code of Civil Procedure section 726's fair value rules *do* apply to the real property segment of mixed collateral, we see no reason why the real property's fair value cannot be determined once all the collateral has been sold in accordance with applicable statutes, and the

creditor is ready to offer to the court all the information the court needs to determine the amount to which the creditor is entitled as a deficiency judgment.

In summation, we disagree with the trial court's conclusion that Code of Civil Procedure section 726's three-month limitation period began to run at the date of the sale of the last item of collateral. Rather, we hold section 9501, subdivision (4)(b)(i) of the California Uniform Commercial Code relieves a mixed collateral creditor entirely from complying with the three-month time limit of Code of Civil Procedure section 726. That time limit is a "provision" or "limitation" of a law respecting real property and, under California Uniform Commercial Code section 9501, such limitations "do not in any way apply to . . . the obligation." Were we to hold otherwise, the obligation to pay a personal judgment could be limited by the real property rule of Code of Civil Procedure section 726 in contravention of California Uniform Commercial Code section 9501.[6]

■ In reviewing a trial court's decision, we review the result, not the reasoning. A decision right in result will not be reversed because it is based on an erroneous theory. (*D'Amico* v. *Board of Medical Examiners* (1974) 11 Cal.3d 1, 19 [112 Cal.Rptr. 786, 520 P.2d 10].) ■ The trial court found the motion for deficiency judgment timely. Our interpretation of the statutes supports this result.

### Disposition

The judgment is affirmed. Costs on appeal are awarded respondents.

Stone (W. A.), Acting P. J., and Levy, J., concurred.

Appellants' petition for review by the Supreme Court was denied March 9, 1999. Baxter, J., did not participate therein. Brown J., was of the opinion that the petition should be granted.

---

[6]We note in passing that there are protections for consumers found in California Uniform Commercial Code section 9501, subdivision (4)(c) to ameliorate potentially harsh consequences of these mixed collateral rules. Subdivision (4)(c) preserves antideficiency protections found in Code of Civil Procedure sections 580a, 580b and 580d. Additionally, "[p]aragraph (b) shall not affect, nor shall it determine the applicability or inapplicability of, any law respecting real property or obligations secured in whole or in part by, real property with respect to a loan or a credit sale made to any individual primarily for personal, family, or household purposes." (Cal. U. Com. Code, § 9501, subd. (4)(c)(v).)