Filed 11/23/15  Welch v. Kemp CA6
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| JEANNE M. WELCH,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>PAUL B. KEMP,<br><br>    Defendant and Respondent. | H041311<br>(Santa Clara County<br>Super. Ct. No. 112CV229964) |

In this legal malpractice action, plaintiff Jeanne M. Welch appeals a judgment entered in favor of her former attorney, defendant Paul B. Kemp, after a bench trial.

Kemp represented Welch in a personal injury action against Charles Koch in 2011. Koch offered to settle that action for $350,000.  Welch informed Kemp she would not accept less than $600,000.  When the trial court excluded Welch's expert's opinion testimony regarding her need for future knee replacement surgery, the $350,000 settlement offer was withdrawn.  Welch prevailed at trial and was awarded $76,224.99 in damages.  She appealed the order excluding evidence of future knee replacement surgery. This court affirmed, finding the trial court had not abused its discretion in excluding the expert's testimony on lack of foundation grounds.

Welch sued Kemp for professional negligence and breach of fiduciary duty, alleging he committed malpractice by, among other things, failing to prepare the expert and failing to advise her that there was a substantial risk the expert would not be allowed to testify regarding her need for knee replacement surgery, which in turn prevented her

from making an informed decision regarding the settlement offer. On appeal, she also contends Kemp negligently advised her to pursue an appeal in the underlying action.

Following a bench trial, the trial court found that there was insufficient evidence to establish that Kemp's actions fell below the standard of ordinary care. The court ordered that Kemp was entitled to recover his costs and denied Welch's motion to tax his expert witness fees.

Welch appeals from the final judgment and the denial of her motion to tax Kemp's expert witness fees. We affirm.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

### A.     *Welch's Personal Injury Suit Against Koch*

Koch hit Welch with his car while she was crossing the street in Los Gatos on December 4, 2009. The collision broke the bones in Welch's lower leg. She was treated by Dr. Stephen Imrie, an orthopedic surgeon and family friend.

On December 8, 2009, Welch retained Kemp to represent her in prosecuting a claim for damages arising out of the accident. A personal injury lawsuit against Koch followed.

Welch saw Dr. Imrie for a follow up appointment in June 2010. According to Welch, at that time, Dr. Imrie told her she would eventually need knee replacement surgery on her injured knee because her preexisting arthritis would worsen due to the accident. Welch communicated that opinion to Kemp.

#### 1.     *Dr. Imrie's Deposition*

Dr. Imrie was deposed as a percipient witness on March 1, 2011. In the legal malpractice lawsuit, Dr. Imrie testified that he spoke to Kemp prior to being deposed in the underlying case. While Dr. Imrie could not recall the substance of that conversation, he "assum[ed]" he would be asked in the deposition whether Welch would need a knee

2

replacement in the future and he was aware "that the standard for admissibility in a court . . . was based on a reasonable medical probability."[1] Kemp likewise testified that he spoke with Dr. Imrie prior to his deposition. According to Kemp, that conversation satisfied him that Dr. Imrie "was going to support the need for future knee surgery."

At his deposition, Dr. Imrie testified that Welch was not "currently" a candidate for total knee replacement, but "[t]hat's not to say in the future she may not be." Dr. Imrie further testified that he wanted to stay away from the term "medically probable." In Kemp's view, at the deposition, the defense attorney did not "pin [Dr. Imrie] down" on the issue of whether Welch would eventually need knee replacement surgery. Therefore, Kemp elected not to ask Dr. Imrie about Welch's future need for knee replacement surgery at the deposition.

Kemp decided to use Dr. Imrie as his medical expert at trial, rather than hiring an independent expert, based on his view that jurors tend to believe treating physicians over "hired guns." Kemp designated Dr. Imrie as a nonretained expert witness on March 7, 2011.

### 2. First Settlement Conference

The parties participated in a settlement conference on April 20, 2011. The lowest demand presented by Welch at that conference was $425,000. The defense made a counter offer of $300,000.

Welch testified that Kemp advised her $300,000 was a "good offer" and that she should "think about it and let him know the next day," but that he never recommended she accept the offer. She said that while Kemp warned her that juries are

---

[1] A plaintiff in a personal injury action must prove damages "within a reasonable medical probability based upon competent expert testimony." (*Jones v. Ortho Pharmaceutical Corp.* (1985) 163 Cal.App.3d 396, 402.)

3

"unpredictable," he stated he was "ready to go to trial" if she "wanted to roll the dice." Kemp testified that he recommended Welch accept the $300,000 settlement offer.

Welch e-mailed Kemp the day after the settlement conference to decline the offer. She wrote: "I did think about it . . . I have to take a chance with the jury."

### 3. *Defense Motions In Limine and Further Settlement Discussions*

The defense filed a number of in limine motions on April 22, 2011, which Kemp received on April 25, 2011. One motion sought to exclude any references to medical "possibilities," another sought to prevent Dr. Imrie from testifying differently than he did at his deposition, and another sought to exclude references to the cost of knee replacement surgery.

The parties participated in a second settlement conference before Judge Woodhouse on April 26, 2011. Welch met privately with Judge Woodhouse and told him she thought $600,000 would fully compensate her. The conference ended shortly thereafter.

Kemp testified that he showed Welch the defense motions in limine while they were at the courthouse for the settlement conference and "she [was] aware of the dangers of the motions." He testified that he told her defendant wanted to exclude "opinions regarding future knee replacement." Welch testified that Kemp showed her the motions in limine at his office following the second settlement conference. She acknowledged that she understood the defense wanted to exclude any reference to future surgery.

On April 27, 2011, Welch e-mailed Kemp to explain her $600,000 settlement demand. She wrote that she arrived at the figure based on the following estimates: $20,000 in costs; $232,000 in attorney fees; $46,000 in medical bills; $190,000 for future knee replacement surgery; $55,000 for lost wages in 2010; and $57,000 in pain and suffering.

The following day, Kemp sent Welch a letter stating that he had recommended she accept the $300,000 settlement offer made at the first settlement hearing. Welch testified

4

that, in fact, Kemp never made such a recommendation. She believed he sent the letter to "cover his butt" after the motions in limine were filed.

The court held a hearing on the motions in limine on April 28, 2011. Kemp argued that Dr. Imrie did not testify at his deposition whether or not a future knee replacement surgery was probable, such that the door was open for him to testify at trial that such a surgery was probable. Kemp stated that he did not know how Dr. Imrie would testify. The court ordered a hearing pursuant to Evidence Code section 402 (section 402) to "determine what [Dr. Imrie] is going to say" regarding the issue of future knee replacement surgery. According to Welch, after the hearing on the motions in limine, Kemp assured her that "as long as Dr. Imrie testified in all probability he will be allowed to testify at trial."

On April 29, 2011, Koch offered to settle the case for $350,000. At Kemp's direction, his assistant conveyed the offer to Welch by e-mail. Welch responded by e-mail 15 minutes later, stating "I fully understand the risks—$350,000 is not enough to compensate me for what I lost and will loose [*sic*]." Welch testified that she was not referring to any risk that she would not be permitted to introduce evidence of her future need for knee replacement surgery, though she knew the defense was trying to exclude such evidence. Welch testified that Kemp never discussed the $350,000 offer with her. Their relationship was strained at that time and "[h]e was basically not really talking to" her.

Kemp e-mailed Welch on May 2, 2011, regarding her $600,000 demand. He noted that, based on her April 27, 2011 e-mail, her demand was based in part on costs and attorney fees. He explained that this was a mistake because costs and fees "come[] out of the plaintiff's damages or verdict" "in personal injury cases." Kemp further noted that, using the figures in Welch's April 27, 2011 e-mail, her estimated damages were $348,000, less than the outstanding offer of $350,000.

5

### 4. *Section 402 Hearing*

The court held a section 402 hearing on May 5, 2011. Kemp testified that, prior to the hearing, he told Dr. Imrie that "he had to give an opinion about whether or not [Welch] needed a future knee replacement, and it couldn't be possibility, it had to be medically probable this was going to happen." According to Kemp, Dr. Imrie told him "[i]t was medically probable [Welch] was going to have this knee replacement within her lifetime" and that he was basing that opinion on "[e]xperience" and "common sense."

At the hearing, Dr. Imrie opined that it was "probable" that Welch would have degenerative changes in her injured knee "over the next 5, 10, 15 years," which would necessitate knee replacement surgery. Dr. Imrie noted that he knew "of no data to support that [opinion] clearly." Apparently prompted by that comment, the court asked "then what do you base your opinion on?" Dr. Imrie responded that "it is based on common opinion, not on hard data"; "it is based on [the] belief throughout the orthopedic community, not just my opinion, but all orthopedists to my knowledge believe that [an] injury to a joint is more likely than not to lead to a degenerative change."

The trial court excluded testimony regarding the need for future knee replacement surgery, reasoning that "the [d]octor says there is no data to support his opinion that the operation might be more likely than not. And he says he wouldn't know for 5 to 10 years. So I think while he says more likely than not, I think [defense counsel] is correct. That's more of a possibility than a probability."

The defense withdrew its settlement offer after the hearing.

### 5. *Verdict and Appeal*

The case proceeded to a jury trial. Welch prevailed and was awarded $76,224.99 in damages. On May 27, 2011, Kemp informed Welch by letter that he considered the trial court's exclusion of Dr. Imrie's testimony about "the probability of a future knee replacement [to be] an absolute error." While Kemp declined to represent Welch on appeal, he told her he thought she should win her appeal. On appeal, this court affirmed,

6

concluding that the trial court did not abuse its discretion in excluding Dr. Imrie's opinion testimony regarding future knee surgery because that testimony "lacked an adequate foundation."[2]  (*Welch v. Koch* (Jan. 7, 2014, H037228) [nonpub. opn.].)

### B.    *Welch's Malpractice Suit Against Kemp*

Welch filed a two-count complaint against Kemp on August 7, 2012, asserting claims for professional negligence and breach of fiduciary duty.  She alleged Kemp breached the applicable standard of care by failing to "prepare" Dr. Imrie (or another expert) to "provide admissible opinion testimony . . . [regarding] the necessity of a future knee replacement surgery."  She further alleged Kemp's failure "to advise [her] to accept the $350,000 [settlement offer] considering the damage that had been done to her case for the failure to secure an admissible expert opinion regarding the necessity of a future knee replacement surgery" both fell below the standard of care for personal injury attorneys and constituted a breach of Kemp's fiduciary duties.[3]

On January 30, 2013, Kemp made Welch an offer to settle pursuant to Code of Civil Procedure section 998 (section 998).  Kemp offered to waive all costs incurred in the litigation in exchange for entry of judgment in his favor.  Welch did not accept the offer.  The case proceeded to a three-day bench trial in January and February, 2014.

### 1.    *Welch's Expert*

Richard Damon testified for Welch as an expert on the applicable standard of care. Damon had previously represented Welch on appeal in her personal injury action against Koch.  She still owed him $12,000 at the time of the legal malpractice trial.  Damon testified he had tried 10 jury trials to verdict and had prepared dozens more cases for trial

---

[2] The trial court in the legal malpractice action took judicial notice of this court's decision in *Welch v. Koch* (Jan. 7, 2014, H037228 [nonpub. opn.]).

[3] The complaint included other allegations, which Kemp addresses in his respondents' brief.  We address only on those theories and allegations Welch pursues on appeal.

that settled. He had not previously testified as an expert on the standard of care of attorneys.

Damon opined that Kemp "should have talked to [Dr.] Imrie about ways to testify regarding his prognosis" to ensure Dr. Imrie's opinion was "based on some kind of a foundation other than pure personal opinion or his experience." He further opined that Kemp violated the standard of care related to client communication by failing to advise Welch following the April 28, 2011 hearing that "there was a big, big doubt whether there would be any recovery for future knee surgery."

### 2. Kemp's Expert

Prescott Kendall testified for Kemp as an expert concerning the applicable standard of care. Kendall testified he had tried at least 125 jury trials to verdict. Kendall opined that Kemp exceeded the standard of care for an attorney in all of the areas that were disputed. Kendall did not fault Kemp for not anticipating that the trial judge "would have an interest in statistical data" because "[t]he doctor's testifying on experienced based medicine and training." With respect to the settlement offer, Kendall opined that Kemp was not required to advise Welch specifically that "there was a substantial risk that [Dr.] Imrie would not be allowed to give an opinion on future knee surgery." Rather, Kemp satisfied the standard of care by giving Welch the motions in limine and discussing them with her.

### 3. Statement of Decision

In a statement of decision filed on June 17, 2014, the trial court found there was "insufficient evidence to establish that Defendant Kemp fell below the applicable ordinary standard of care in preparing for trial and communicating with, and advising plaintiff on the merits and risks of the proposed settlement offers." With respect to Dr. Imrie's testimony, the court reasoned that "Dr. Imrie testified that the opinion was founded on the experience he had in this field and his discussions with other orthopedists. The Court believes the judge [in the personal injury action] made a mistake in finding no

8

foundation. This Court would have found differently. The point of the matter is that reasonable Courts may disagree and that an attorney can only use his or her best effort to present the case. There is no possible way Mr. Kemp could have guaranteed the outcome." As to the settlement offer, the court found that "Welch was aware, as of April 26, that counsel for Koch sought a restriction on trial testimony about future knee surgery, which is one of the risks, however small, that [Welch informed Kemp she] 'fully underst[ood]' in rejecting the $350,000 offer on April 29." The court ordered that Kemp was entitled to recover his costs.

The court entered judgment for Kemp on June 30, 2014.

### 4. *Motion to Tax Costs*

Kemp filed a memorandum of costs seeking to recover $19,067.87. On July 1, 2014, Welch moved to tax costs, arguing that Kemp was not entitled to the $15,520 in expert witness fees he requested pursuant to section 998 because he had not made a good faith settlement offer. Welch contended that Kemp's offer to waive costs was merely a token offer. The trial court denied the motion on July 25, 2014.

Welch timely appealed the judgment and the postjudgment order on August 5, 2014.

## II. DISCUSSION

### A. *Standard of Review*

Generally, where the trial court's statement of decision contains findings of fact and conclusions of law, we review the findings of fact to determine whether they are supported by substantial evidence and review the conclusions of law de novo. (*ASP Properties Group, L.P. v. Fard, Inc.* (2005) 133 Cal.App.4th 1257, 1266.) " ' "[A]ny conflict in the evidence or reasonable inferences to be drawn from the facts will be resolved in support of the determination of the trial court decision." ' " (*Cuiellette v. City of Los Angeles* (2011) 194 Cal.App.4th 757, 765.)

9

Where, as here, " 'the trier of fact has expressly or implicitly concluded that the party with the burden of proof did not carry the burden and that party appeals' " (*Sonic Manufacturing Technologies, Inc. v. AAE Systems, Inc.* (2011) 196 Cal.App.4th 456, 465), " 'the question for a reviewing court becomes whether the evidence compels a finding in favor of the appellant as a matter of law. [Citations.] Specifically, the question becomes whether the appellant's evidence was (1) "uncontradicted and unimpeached" and (2) "of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding." ' " (*Id.* at p. 466.)

"In reviewing a trial court's decision, we review the result, not the reasoning. A decision right in result will not be reversed because it is based on an erroneous theory." (*Florio v. Lau* (1998) 68 Cal.App.4th 637, 653.)

**B.    Governing Legal Principles**

"In civil malpractice cases, the elements of a cause of action for professional negligence are: '(1) the duty of the attorney to use such skill, prudence and diligence as members of the profession commonly possess; (2) a breach of that duty; (3) a proximate causal connection between the breach and the resulting injury; and (4) actual loss or damage.' " (*Wiley v. County of San Diego* (1998) 19 Cal.4th 532, 536.) The plaintiff has the burden of proving each of these elements. (*E-Pass Technologies, Inc. v. Moses & Singer, LLP* (2010) 189 Cal.App.4th 1140, 1148.) The elements of a cause of action for breach of fiduciary duty are the existence of a fiduciary relationship, breach of fiduciary duty, and damages. (*Oasis West Realty, LLC v. Goldman* (2011) 51 Cal.4th 811, 820.)

**C.    Failure to Prepare Expert to Testify to Proper Foundation For Opinions**

Welch's first theory of liability is that Kemp breached his duty of care by failing to ensure Dr. Imrie had an adequate foundation for his opinion that she would need knee replacement surgery in the future. The record evidence does not support the underlying contention—that Kemp failed to ensure Dr. Imrie had an adequate foundation for his opinion. Rather, as discussed below, it shows Kemp inquired into Dr. Imrie's foundation,

10

Dr. Imrie provided Kemp with an adequate foundation, and then Dr. Imrie failed to testify to that foundation at the section 402 hearing.

Kemp testified that he spoke to Dr. Imrie before the section 402 hearing about both his opinion regarding Welch's need for future knee replacement surgery and the basis for that opinion. According to Kemp, Dr. Imrie said his opinion that Welch would probably need a knee replacement was based on "[e]xperience." Expert medical opinion about future detriment may properly be based on "the plaintiff's particular circumstances and the expert's experience with similar cases." (*Bihun v. AT&T Information Systems, Inc.* (1993) 13 Cal.App.4th 976, 995, disapproved on other grounds in *Lakin v. Watkins Associated Industries* (1993) 6 Cal.4th 644, 664; see *Cordiner v. Los Angeles Traction Co.* (1907) 5 Cal.App. 400, 404-405 [testimony of duly qualified medical experts which shows that, in a majority of cases a particular type of injury results in particular future consequences tends to prove the reasonable certainty that such consequences will follow in any given case of like injury].) Thus, here, Dr. Imrie could properly have based his opinion that Welch would need knee replacement surgery on his examination of her injury and his experience with other patients with similar injuries, as he suggested to Kemp he would.

However, at the section 402 hearing, Dr. Imrie did not testify that his opinion was based on his experience.[4] Instead, he relied on the "belief" among "all orthopedists . . . that [an] injury to a joint is more likely than not to lead to a degenerative change." Another panel of this court previously concluded that Dr. Imrie provided no foundation

---

[4] In its statement of decision, the trial court stated that "Dr. Imrie testified [that his] opinion was founded on the experience he had in this field and his discussions with other orthopedists." To the extent that constitutes a finding of fact, it is unsupported by substantial evidence in the record. The record contains only that portion of the section 402 hearing that was read into the record at trial. In it, Dr. Imrie gave only one basis for his opinion—"[the] belief throughout the orthopedic community . . . that [an] injury to a joint is more likely than not to lead to a degenerative change."

11

for that belief, such that his opinion had "no evidentiary value" under *Jennings v.*
*Palomar Pomerado Health Systems, Inc.* (2003) 114 Cal.App.4th 1108, 1117 ("an 'expert
opinion is worth no more than the reasons upon which it rests' "). Because the record
does not disclose that Kemp failed to ensure Dr. Imrie had an adequate foundation for his
opinion (but rather that Dr. Imrie failed to testify to that foundation), Welch's first theory
of liability fails.

Welch's first theory of liability fails for a second reason as well—failure to
establish causation. "To prevail in a legal malpractice action, '[s]imply showing the
attorney erred is not enough.' [Citation.] The plaintiff must also establish that, but for
the alleged malpractice, settlement of the underlying lawsuit would have resulted in a
better outcome." (*Filbin v. Fitzgerald* (2012) 211 Cal.App.4th 154, 166.) Here, Welch
must demonstrate that, if Kemp had ensured Dr. Imrie had a proper foundation for his
opinion, then she would have been awarded more damages at trial because Dr. Imrie's
testimony would have been admitted and jurors would have credited it. She does not
even attempt to make that showing. Instead, her causation argument is limited to her
second theory of liability—that Kemp failed to properly advise her regarding the
settlement offer.

### D. *Failure to Advise in Connection With the Settlement Offer*

Welch's second theory of liability is that Kemp committed malpractice by failing
to inform her, while the $350,000 offer was pending, that Dr. Imrie likely would not be
permitted to testify that she would need future knee replacement surgery because that
opinion lacked foundation. Welch characterizes the issue as a failure to keep her
reasonably informed about significant developments in the case, as required by
rule 3-500 of the California Rules of Professional Conduct. According to Welch,
between the hearing on the motions in limine (on April 28, 2011) and the section 402
hearing (on May 5, 2011) there developed "a significant legal question as to whether

12

Dr. Imrie had a foundation to opine based on a reasonable medical certainty." We disagree.

While Koch's motions in limine sought to exclude Dr. Imrie's opinions regarding future knee surgery, they did not do so on the ground that the foundation he provided to support the probability of the need for future knee surgery was inadequate. Rather, the motions in limine were based on the theory that Dr. Imrie had not testified at his deposition that it was medically probable that Welch would need future knee replacement surgery. Likewise, at the hearing on the motions in limine, the question whether Dr. Imrie had an adequate basis for the opinion that it was medically probable that Welch would need future knee replacement surgery was not raised. Instead, that hearing focused on whether Dr. Imrie would even opine that it was medically probable that Welch would need future knee replacement surgery. Only when Dr. Imrie finally offered that opinion at the section 402 hearing, and noted that he knew "of no data to support" it, did the trial court question the foundational basis for the opinion. Because the specific foundational challenge to Dr. Imrie's opinion that ultimately resulted in its exclusion did not arise until the section 402 hearing, there was no significant development about which to inform Welch before that hearing.

### E. *Advice to Pursue Unsuccessful Appeal*

Welch's third theory is that Kemp is liable for advising her to appeal the order excluding evidence of her need for a future knee replacement. While Welch characterizes that argument as a "theory of liability," the substance of her argument is that the fees she incurred on appeal should be included in her damages because she incurred those fees to remedy Kemp's errors. Because Welch has not carried her burden on appeal to show the evidence compels a finding that Kemp committed malpractice as a matter of law, we need not consider the proper measure of damages.

To the extent Welch's position is that Kemp's advice regarding an appeal constituted a separate instance of malpractice, that theory fails for two reasons. First, the

13

theory appears not to have been raised below. It was not alleged in the complaint, mentioned in Welch's trial brief, raised in her counsel's opening statement, or addressed by her expert. Second, Welch's appellate briefs contain no substantive argument supporting the proposition that Kemp's conduct in connection with her appeal constituted malpractice. "When a point is asserted without argument and authority for the proposition, 'it is deemed to be without foundation and requires no discussion by the reviewing court.' " (*In re S.C.* (2006) 138 Cal.App.4th 396, 408; accord *Berger v. Godden* (1985) 163 Cal.App.3d 1113, 1117 ["failure of appellant to advance any pertinent or intelligible legal argument . . . constitute[s] an abandonment of the [claim of error]"].)

### F. Welch's Other Appellate Arguments

Welch levels various criticisms at the trial court's reasoning. For example, she maintains the trial court improperly applied the judgmental immunity doctrine; failed to presume this court's decision in *Welch v. Koch* was correct; and ignored the core of her malpractice claims, instead addressing collateral matters. Even if Welch's critiques have merit, they do not justify reversal. (*Florio v. Lau*, *supra*, 68 Cal.App.4th at p. 653 ["A decision right in result will not be reversed because it is based on an erroneous theory."].) Therefore, we need not address them.

### G. Section 998

#### 1. Legal Principles and Standard of Review

Section 998 is a cost-shifting statute designed to encourage pretrial settlements and avoid needless litigation. (*Barba v. Perez* (2008) 166 Cal.App.4th 444, 451.) It provides that "[i]f an offer made by a defendant is not accepted and the plaintiff fails to obtain a more favorable judgment or award, . . . the court or arbitrator, in its discretion, may require the plaintiff to pay a reasonable sum to cover costs of the services of expert witnesses, who are not regular employees of any party, actually incurred and reasonably necessary in either, or both, preparation for trial or arbitration, or during trial or

14

arbitration, of the case by the defendant." (§ 998, subd. (c)(1).) To be valid, a section 998 offer must be made in good faith, which requires that the offer of settlement be " 'realistically reasonable under the circumstances of the particular case.' " (*Jones v. Dumrichob* (1998) 63 Cal.App.4th 1258, 1262.) " 'Normally, therefore, a token or nominal offer will not satisfy this good faith requirement.' " (*Ibid.*)

"As a general rule, the reasonableness of a defendant's offer is measured, first, by determining whether the offer represents a reasonable prediction of the amount of money, if any, defendant would have to pay plaintiff following a trial, discounted by an appropriate factor for receipt of money by plaintiff before trial, all premised upon information that was known or reasonably should have been known *to the defendant*. . . . [¶] If the offer is found reasonable by the first test, it must then satisfy a second test: whether defendant's information was known or reasonably should have been known to plaintiff. This second test is necessary because the section 998 mechanism works only where the offeree has reason to know the offer is a reasonable one." (*Elrod v. Oregon Cummins Diesel, Inc.* (1987) 195 Cal.App.3d 692, 699, fn. omitted (*Elrod*).) "Where, as here, the offeror obtains a judgment more favorable than its offer, the judgment constitutes prima facie evidence showing the offer was reasonable and the offeror is eligible for costs as specified in section 998. The burden is therefore properly on plaintiff, as offeree, to prove otherwise." (*Id.* at p. 700.) We review the trial court's determination that a section 998 offer was reasonable and made in good faith for abuse of discretion. (*Elrod, supra,* at p. 700.)

2.     *Analysis*

Welch argues Kemp's offer to settle for a cost waiver was unreasonable because he could not have anticipated that the trial court would apply the judgmental immunity doctrine when he did not attempt to establish that defense. We conclude Welch has not met her burden of showing that the trial court exercised its discretion in " 'an arbitrary,

15

capricious or patently absurd manner.' " (*Culbertson v. R. D. Werner Co., Inc.* (1987) 190 Cal.App.3d 704, 710 (*Culbertson*).)

A defendant is entitled to make a "modest settlement offer," even if substantial damages are claimed, based on his perception that he has a strong case. (*Culbertson, supra*, 190 Cal.App.3d at p. 710.) Indeed, courts have held that an offer to waive costs may be in good faith where it has significant monetary value. (See *Hartline v. Kaiser Foundation Hospitals* (2005) 132 Cal.App.4th 458, 471; *Jones v. Dumrichob*, s*upra*, 63 Cal.App.4th at p. 1264.) That was the case here, as Kemp sought over $19,000 in costs. The trial court reasonably could have concluded that the settlement offer to waive costs was reasonable based on the fact that Kemp had denied liability throughout the litigation. (See *Colbaugh v. Hartline* (1994) 29 Cal.App.4th 1516, 1528-1529 [" 'When a defendant perceives himself to be fault free and has concluded that he has a very significant likelihood of prevailing at trial, it is consistent with the legislative purpose of section 998 for the defendant to make a modest settlement offer.' "].) We find no abuse of discretion.

## III.    DISPOSITION

The judgment is affirmed. Kemp shall recover his costs on appeal.

16

_____

Walsh, J.[*]

WE CONCUR:

_____

Rushing, P.J.

_____

Elia, J.

<u>Welch v. Kemp</u>
H041311

_____

[*] Judge of the Santa Clara County Superior Court assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.