Filed 10/17/13  P. v. Scott CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>JAMES RAY SCOTT, JR.,<br><br>        Defendant and Appellant. | E056447<br><br>(Super.Ct.Nos. RIF134516 &<br>RIF147109)<br><br>OPINION |

APPEAL from the Superior Court of Riverside County.  Christian F. Thierbach, Judge.  Affirmed.

David L. Kelly, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Julie L. Garland, Assistant Attorney General, A. Natasha Cortina and Ronald A. Jakob, Deputy Attorneys General, for Plaintiff and Respondent.

1

A jury found defendant and appellant James Ray Scott, Jr., guilty of (1) three counts of robbery (Pen. Code, § 211);[1] (2) one count of conspiring to commit a crime (§ 182, subd. (a)(1)); and (3) two counts of actively participating in a criminal street gang (§ 186.22, subd. (a)). As to the first count of robbery, the jury found true the allegations that (1) it was a street gang crime and defendant carried a firearm during the commission of the offense (§ 12021.5, subd. (a)); (2) defendant personally used a firearm during the commission of the offense (§ 12022.53, subd. (b)); and (3) the crime was committed to benefit a criminal street gang (§ 186.22, subd. (b)). For the second and third robbery convictions, the jury found true the allegations the crimes were committed to benefit a criminal street gang. (§ 186.22, subd. (b).)

Defendant admitted he was on bail when he committed the third robbery offense (§ 211) and second active gang participation offense (§ 186.22, subd. (a)). (§ 12022.1.) Defendant also admitted suffering (1) a prior strike conviction (§§ 667, subds. (c) & (e), 1170.12, subd. (c)(2)(A)); and (2) a prior serious felony conviction (§ 667, subd. (a)). The trial court sentenced defendant to prison for a term of 47 years, 8 months.

Defendant contends the trial court erred by (1) not severing the November 2008 charges from the January 2007 charges, and (2) not severing the gang allegations. Defendant asserts his trial counsel was ineffective for (1) not requesting bifurcation of the gang allegations, and (2) failing to move for a new trial. We affirm the judgment.

---

[1] All subsequent statutory references will be to the Penal Code unless otherwise indicated.

## FACTUAL AND PROCEDURAL HISTORY

A.     2007 CRIMES

In January 2007, Troy Lynn Proctor (Proctor), went to a liquor store on Alessandro Boulevard in Riverside to cash her paycheck.  Proctor was accompanied by her husband (Husband) and a friend.  Proctor cashed her check, which was approximately $300.  Defendant was at the liquor store with two other people when Proctor received the money from her paycheck.

Proctor, Husband, and Proctor's friend, drove from the liquor store to a gas station across the street.  Defendant and his two friends ran to their car and followed Proctor's car.  When Husband finished pumping gas and was getting back inside the car, where Proctor was already in the backseat, two men approached the car.  Defendant was one of the men who approached the car.  One of the men asked Husband if they could use his cell phone.  Husband said he did not have a cell phone.

One of the two men then said to Husband, "'Give me your money, or 'You know what this is, give me your money.'"  Husband gave the men $20 and said, "'That's all I got.'"  One of the two men said, "'We just seen her cash her check.  We know she has got money.'"  One of the men said, "'Give me the money, bitch.'"  Defendant pointed a gun at Proctor.  Defendant said to Husband, "'Tell your bitch to give me some money, or I am going to put one in her.'"  Husband told Proctor to give defendant her money.  Proctor gave all the cash from her paycheck, approximately $300, to Husband.  The men took the money from Husband, ran to a car, and "took off."  Husband and Proctor followed defendant, recorded defendant's license plate number, and called the police.

3

B.    2008 CRIMES

In November 2008, Thurmon Jackson III (Jackson) went to a liquor store with his friend.  While in the parking lot, Jackson saw a young black male walk into the liquor store and pick up a soda.  Jackson saw seven or eight young black males in front of the liquor store; defendant was part of the group in front of the store.  The young men were wearing "[l]ow pants" and had "[b]andannas hanging out [of] their pockets."  The group of males outside the store were crouched down, looking through the store's windows, while hiding behind a sign.

When the young man inside the store went to the counter to make his purchase, the group outside the store "rushed in" and began "[h]itting him and assaulting him."  The store owner chased the group out of the store.  Jackson was outside the store, holding his cell phone.  Jackson told defendant, "[W]e d[o]n't need this is our neighborhood."  Defendant called Jackson "an Uncle Tom."  Jackson informed defendant he was calling the police.  Defendant ripped a gold chain from Jackson's neck.  Jackson suffered bruises on his neck from defendant ripping the chain away.

After defendant took the chain, he ran toward a car.  As defendant was leaving he said, "This is Edgemont and Dorner Blocc."  The group of men, including defendant, entered a car and left.  Jackson called the police.

C.    GANG EVIDENCE

Edgemont Criminals and Dorner Blocc were two major criminal gangs in Moreno Valley.  In 2003, Edgemont Criminals, Dorner Blocc, and Young Paper Chasers, merged to form a single gang referred to as the Edgemont Dorner Blocc

4

(EDB).  EDB has a rivalry with another Moreno Valley gang known as Sex Cash. When a member of EDB sees a member of Sex Cash, the EDB member is supposed to start a confrontation with the Sex Cash member.

On February 24, 2007, Riverside County Sheriff's Detective Colmer conducted a vehicle stop in an area known to be EDB "turf," along Alessandro Boulevard. Defendant was inside the vehicle with three people the detective knew to be members of EDB.  Detective Colmer believed the robbery involving Proctor and Husband was committed to benefit a criminal street gang, due to (1) the crime occurring within EDB's "primary turf"; (2) robbery being consistent with prior crimes by EDB members; and (3) the people involved in the crime.

Devon King (King) was the person who approached Proctor's car with defendant.  Detective Colmer knew King to be a member of the Big Johnson Crew, which is "aligned and affiliated" with EDB.  King is known as C-Mel and has various tattoos, such as "'Fuck Sex Fags,'" which is a disrespectful reference to Sex Cash.  The third individual involved in the 2007 robbery was Jorge Martinez, who has a tattoo referencing the Young Paper Chasers.

Detective Colmer believed defendant was an active member of EDB due to (1) the 2007 robbery occurring within EDB territory, (2) the crime being consistent with EDB's activities, (3) King and Jorge Martinez being part of the 2007 robbery, (4) defendant being found in the car with EDB members in February 2007, and (5) police reports listing defendant as a suspect in jailhouse fights where he was fighting rival gang members or fighting alongside EDB members.

5

Riverside County Sheriff's Deputy Moreno believed defendant participated in the feud between EDB and Sex Cash because, while incarcerated, defendant engaged in physical fights with members of Sex Cash, defendant yelled at members of Sex Cash, and "threw" gang signs at members of Sex Cash. Deputy Moreno believed defendant was an active gang member due to (1) defendant's contacts with gang members; (2) defendant's criminal history; (3) defendant committing the 2008 robbery in gang territory; (4) defendant yelling "Edgemont or Dorner" while leaving the 2008 robbery; and (5) defendant having the moniker "Ray Ruk."

Deputy Moreno believed the 2008 robbery was committed to benefit a criminal street gang because: (1) the crime was committed in EDB territory; (2) defendant said "'This is Edgemont Dorner Blocc,'" when leaving the liquor store; and (3) defendant was with known gang members during the 2007 robbery.

### D. PROCEDURAL HISTORY

On March 29, 2007, the district attorney filed an information charging defendant with two counts of robbery (§ 211), conspiracy (§ 182, subd. (a)(1)), and active gang participation (§ 186.22, subd. (a)) for the 2007 robbery involving Proctor and Husband. The information further alleged defendant suffered a prior strike conviction and was on probation when he committed the 2007 robberies.

On March 5, 2009, the district attorney filed an information charging defendant with robbery (§ 211) and active participation in a criminal street gang (§ 186.22, subd. (a)) for the 2008 robbery involving Jackson. The information included allegations that the robbery was committed to benefit a criminal street gang (§ 186.22, subd. (b)) and

6

the crimes were committed while defendant was released from custody on a pending case (§ 12022.1). The information also set forth allegations that defendant suffered a prior strike and prior serious conviction.

On June 11, 2009, the prosecutor moved to consolidate the two cases. Defense counsel did not object. The trial court granted the consolidation motion. On April 13, 2011, the district attorney filed an amended information charging defendant with three counts of robbery (§ 211), conspiracy (§ 182, subd. (a)(1)), and two counts of active gang participation (§ 186.22, subd. (a)). The information set forth allegations that the three robberies were committed to benefit a criminal street gang (§ 186.22, subd. (b)), defendant personally used a firearm during the 2007 robberies (§ 12022.53, subd. (b)), and defendant carried a firearm during a street gang crime (§ 12021.5, subd. (a)). The amended information included allegations of two prior strikes and a prior serious felony conviction.

On April 3, 2012, defense counsel (different counsel than in 2009) moved to sever the charges pertaining to the 2008 robbery from the charges pertaining to the 2007 robbery. In the written motion, defense counsel asserted the evidence concerning the 2008 robbery was much stronger than that for the 2007 robbery, and that the crimes involved distinct fact patterns, witnesses, and took place nearly two years apart. Defendant argued there was "inherent prejudice" in the jury hearing the facts of both robberies, especially given that the 2007 robbery involved a firearm, while the 2008 robbery did not.

The Honorable Helios J. Hernandez held a hearing on the severance motion on April 12, 2012. At the hearing, defense counsel asserted the gang evidence for the 2007 offense was "incredibly weak," while the 2008 robbery was "clearly a gang case," due to defendant yelling, "'This is Edgemont and Dorner Blocc,'" when fleeing. Counsel further asserted the witnesses for the 2007 robbery provided inconsistent statements, while the witnesses for the 2008 robbery were much more credible.

The prosecutor asserted the gang evidence for the 2007 robbery was not weak, given the crime was committed with known gang members. The prosecutor also explained that the witnesses' statements for the 2007 robbery were not inconsistent, because their statements could be interpreted in a manner that was consistent.

The trial court found the two cases involved the same class of crimes, in that they were both robbery cases, the cases were committed close in time, and in the same city, but the court noted the crimes involved different witnesses. The court concluded one case did not appear stronger than the other. The trial court reasoned that the alleged inconsistent witness statements for the 2007 robbery could assist the defense in defending the 2008 robbery by making the prosecution's case appear problematic. The trial court said, "They're in the same class of crimes and I don't see that one [case] is great and the other one is terrible. They both have their problems. So motion denied."

## DISCUSSION

### A.     SEVERING THE 2007 AND 2008 CHARGES

Defendant contends the trial court erred by not severing the 2007 charges from the 2008 charges. We disagree.

8

"An accusatory pleading may charge two or more different offenses connected together in their commission, or different statements of the same offense or two or more different offenses of the same class of crimes or offenses, under separate counts, and if two or more accusatory pleadings are filed in such cases in the same court, the court may order them to be consolidated."  (§ 954.)

""""In determining whether a trial court abused its discretion under section 954 in declining to sever properly joined charges, 'we consider the record before the trial court when it made its ruling.'"  [Citation.]  "The relevant factors are whether (1) the evidence would be cross-admissible in separate trials, (2) some charges are unusually likely to inflame the jury against the defendant, (3) a weak case has been joined with a strong case, or with another weak case, so that the total evidence may unfairly alter the outcome on some or all charges, and (4) one of the charges is a capital offense, or joinder of the charges converts the matter into a capital case."  [Citation.]  "[I]f evidence underlying the offenses in question would be 'cross-admissible' in separate trials of other charges, that circumstance normally is sufficient, standing alone, to dispel any prejudice and justify a trial court's refusal to sever the charged offenses."  [Citations.]'"  (*People v. Scott* (2011) 52 Cal.4th 452, 469-470.)

The 2007 charges involved allegations that defendant (1) actively participated in the EDB gang (§ 186.22, subd. (a)), and (2) the robbery was committed to benefit EDB (§ 186.22, subd. (b)).  The 2008 charges included allegations that defendant (1) actively participated in the EDB gang (§ 186.22, subd. (a)), and (2) the robbery was committed to benefit EDB (§ 186.22, subd. (b)).

The evidence about EDB was cross-admissible.  For example, evidence of (1) whether EDB was an ongoing organization, (2) the primary activities of the gang, (3) whether the gang has a common name, and (4) whether the members have engaged in a pattern of criminal gang activity.  (§ 186.22, subd. (f).)  These factors needed to be established in both cases.  As a result, there was cross-admissible evidence pertaining to the substantive gang charges and the gang enhancements.  As a result, the trial court's decision to not sever the charges was within reason, because the trial court could reasonably conclude there was sufficient cross-admissible gang evidence to keep the charges joined.

Defendant asserts the 2007 and 2008 charges should have been severed because (1) the 2007 case was a "non-gang case"; (2) the trial court noted the gang expert would be available for separate trials; and (3) the trial court did not indicate its decision was based upon the cross-admissibility of the gang evidence.  First, contrary to defendant's assertion, the 2007 case involved a charge of active gang participation and a gang enhancement.  Ultimately, at trial, the evidence of the 2007 offense showed defendant committed that robbery with active gang members.  Thus, we are not persuaded by the argument that the 2007 case was a "non-gang case."

Second, the trial court remarked that "the officer is going to be here anyway . . . [s]o there's no witness convenience issues."  Policy reflects joinder is the preferred course of action because it promotes efficiency.  (*People v. Scott*, *supra*, 52 Cal.4th at p. 469.)  In this case, it can be inferred from the trial court's remark that the same gang officer would testify about EDB at both trials if the cases were severed.  Thus indicating

10

there would be redundancy in the gang officer testifying to the same information at separate trials. While the officer might have been available for two separate trials, the issue remains that the same information about EDB would have been elicited at both trials. As a result, we find defendant's argument about the officer's availability to be unpersuasive given the preference for joinder.

Third, in rendering its ruling, the trial court said it found the crimes were of the same class, close in location, and sufficiently close in time thus explaining why there was no reason to sever the charges. We review the trial court's ruling, not its reasoning. (*Florio v. Lau* (1998) 68 Cal.App.4th 637, 653.) As explained *ante*, there was cross-admissible evidence relevant to the 2007 and 2008 charges; as a result, the trial court's decision was within reason. Thus, we are not persuaded by defendant's argument concerning the trial court's reasoning.

### B.     GANG ALLEGATIONS

Defendant contends the trial court erred by not severing or bifurcating the gang allegations. The People assert defendant forfeited this argument by failing to move the trial court to sever or bifurcate the gang allegations. Defendant concedes he did not move the trial court to sever or bifurcate the gang allegations. A trial court does not have a sua sponte duty to order severance or bifurcation. (*People v. Rogers* (2006) 39 Cal.4th 826, 850 [severance]; *People v. Hernandez* (2004) 33 Cal.4th 1040, 1050-1051 [defendant bears the burden to show bifurcation should be granted].) Since defendant did not move to sever or bifurcate the gang allegations, we conclude the issue concerning the trial court's alleged error in severing or bifurcating the gang allegations

11

has been forfeited.  (*People v. Fuiava* (2012) 53 Cal.4th 622, 653 [issue not raised below is forfeited].)

    C.    <u>INEFFECTIVE ASSISTANCE OF COUNSEL</u>

Defendant contends his trial counsel was ineffective for failing to (1) request bifurcation of the gang allegations, and (2) move for a new trial.  We disagree.

"To establish ineffective assistance of counsel, defendant must show both: (1) that counsel's performance was deficient; and (2) that the deficient performance prejudiced the defense.  [Citations.]"  (*People v. Cowan* (2010) 50 Cal.4th 401, 493, fn. 31.)  When the reasons for an attorney's decisions are not apparent from the record, "'we will not assume inadequacy of representation unless counsel had no conceivable tactical purpose.'  [Citation.]"  (*People v. Hines* (1997) 15 Cal.4th 997, 1065.)

Gang enhancements are often "inextricably intertwined" with the substantive offense.  (*People v. Hernandez* (2004) 33 Cal.4th 1040, 1048.)  "[E]vidence of gang membership is often relevant to, and admissible regarding, the charged offense.  Evidence of the defendant's gang affiliation—including evidence of the gang's territory, membership, signs, symbols, beliefs and practices, criminal enterprises, rivalries, and the like—can help prove identity, motive, modus operandi, specific intent, means of applying force or fear, or other issues pertinent to guilt of the charged crime.  [Citations.]  To the extent the evidence supporting the gang enhancement would be admissible at a trial of guilt, any inference of prejudice would be dispelled, and bifurcation would not be necessary.  [Citation.]"  (*Id.* at pp. 1049-1050.)

In this case, the evidence concerning defendant's gang affiliation and the rivalry with Sex Cash was needed in order to explain the events surrounding the 2008 robbery. The gang evidence provided context for the jury to understand why Jackson confronted defendant and why Jackson had enough time to see defendant in order to identify him. If the evidence were whittled down to reflect only that defendant ripped a chain from Jackson's neck, the jury could question the truth of the seemingly random incident and how Jackson had time to see defendant. Accordingly, defendant's trial attorney could reasonably conclude that a motion to bifurcate the gang allegations would have been futile, given the intertwined nature of the 2008 gang evidence and substantive offense evidence. As a result, we cannot assume trial counsel's representation was inadequate, since there is a reasonable explanation for the failure to request bifurcation.

Defendant asserts there could be no tactical purpose for trial counsel failing to request bifurcation of the gang allegations because the gang evidence was "highly inflammatory." As explained *ante*, defendant's trial counsel could have reasonably concluded a motion to bifurcate would have been futile given the intertwined nature of the gang evidence and 2008 substantive robbery evidence. Accordingly, we find defendant's argument to be unpersuasive.

Defendant contends his trial counsel was ineffective for not moving for a new trial after the verdict was rendered. Defendant asserts his counsel should have argued for a new trial based upon the introduction of "highly inflammatory" gang evidence because the gang allegations should have been bifurcated. Defendant's arguments concerning the motion for new trial are the same as his argument for the bifurcation

motion.  Since we have already discussed these issues *ante*, we do not discuss them again here.  We find defendant's argument concerning the motion for new trial to be unpersuasive.

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS


MILLER
J.


We concur:


McKINSTER
Acting P. J.


CODRINGTON
J.


14