Filed 12/4/14  H&H Investment v. Chung CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| H & H INVESTMENT COMPANY, INC. et al.,<br><br>　　　Plaintiffs, Cross-defendants and Respondents,<br><br>v.<br><br>CHIU-MING CHUNG,<br>　　　Defendant, Cross-complainant and Appellant;<br><br>SHIH-MING HSIEH,<br>　　　Defendant and Appellant | E057223<br><br>(Super.Ct.No. SCVSS138571)<br><br>OPINION |

APPEAL from the Superior Court of San Bernardino County.  Joseph R. Brisco, Judge.  Affirmed.

Orrick, Herrington & Sutcliffe, Matthew H. Poppe and M. Leah Somoano for Defendant, Cross-complainant and Appellant Chiu-Ming Chung and Defendant and Appellant Shih-Ming Hsieh.

1

Greenberg Glusker Fields Claman & Machtinger, Fred A. Fenster, William M. Walker and Lori L.Werderitch for Plaintiffs, Cross-defendants and Respondents.

This is the second opinion from this court in this case, which is the latest in a series of lawsuits the Second District Court of Appeal has described as involving "two families and one golf course."[1]  We previously reversed the trial court's grant of judgment on the pleadings and/or summary adjudication to plaintiffs, cross-defendants, and respondents H&H Investment Co., Inc. (HHI) and Jeng-Cheng Ho (Ho and, together with HHI, plaintiffs).  (*H & H Investment Company, Inc. v. Chung et al.* (Aug. 17, 2010, E046900, E047471 [nonpub. opn.].)  Defendant, cross-complainant, and appellant Chiu-Ming Chung (Chung) and defendant and appellant Shih-Ming Hsieh (Hsieh and, together with Chung, defendants) now appeal from a judgment after bench trial in favor of plaintiffs, which among other things declares no amount remains due on a $4.5 million loan from Chung to HHI, quiets title in the above-mentioned golf course in favor of HHI, and rules in favor of plaintiffs on Chung's cross-claims.  Defendants contend the entire $4.5 million in loan principal, plus interest and late fees, is due and owing, and the trial court erred in allowing HHI to quiet title in the golf course property and denying Chung repayment and foreclosure.

For the reasons stated below, we affirm.

---

[1] (*Hsieh v. Ho* (Sept. 21, 2006, B182550) [nonpub. opn.].)

## I. FACTUAL AND PROCEDURAL BACKGROUND[2]

HHI is a closely-held corporation, formed in 1991, the only substantial assets of which are a golf course property and the related golf business. HHI has four owners, each with a 25 percent share: Hsieh and his wife, and Ho and his wife. Hsieh is married to Ho's older sister, so Hsieh and Ho are brothers-in-law. The other party to this appeal, Chung, is married to one of Hsieh's sons, and has lived together in the same house with her in-laws (Hsieh and his wife) since her marriage—27 years as of the time of trial in this case.

HHI purchased the golf course property from a third party in 1991, a purchase that was financed in part by a loan from the seller in the amount of $4.5 million. In 1994, Hsieh arranged for HHI to refinance the loan, utilizing a series of transactions. First, Tonical Investments, Ltd. (Tonical), an entity controlled by Hsieh, borrowed $4.5 million from a bank, BNP Paribas (BNP). This loan was secured with collateral provided by the Hsieh and Ho families. Tonical then loaned the $4.5 million to Chung—this loan was not secured by any collateral, and indeed only scantily documented with a one page, handwritten "receipt." Chung then loaned the $4.5 million to HHI, secured by a lien in the form of a deed of trust for the golf course property. HHI used the $4.5 million to pay off the original loan from the seller of the golf course.

---

[2] The below summary makes some use of language from our opinion resolving the first round of appeals in this action (*H & H Investment Company v. Chung*, *supra*, case Nos. E046900 and E047471.) in which we took background facts from and quoted from an opinion issued by the Second District Court of Appeal (*Hsieh v. Ho*, *supra*, case No. B182550).

3

By no later than May 2003, and perhaps earlier, the BNP-Tonical loan had been paid off. Credits toward repayment of the BNP-Tonical loan (interest and principal) came from four sources: (1) cash payments from HHI to Chung, who passed the funds on to Tonical, which in turn passed the funds on to BNP; (2) payments made by Hsieh directly to BNP; (3) payments made by Ho directly to BNP, at the direction of Hsieh; and (4) several "currency conversions" arranged by Hsieh, converting Tonical's repayment obligation to BNP into different currencies, and resulting in a reduction in the loan's principal balance as expressed in U.S. dollars.

Additionally, Hsieh's testimony in the 2002 action, made a part of the record in the present case, establishes that Chung now owes nothing to Tonical. But Chung's debt to Tonical was not satisfied by any payments that Chung made; she testified at trial that she never made any payments to Tonical, with the exception of passing on money received from HHI.

In the 2002 action, Hsieh brought suit against Ho in Los Angeles County Superior Court (*Hsieh v. Ho*, *supra*, case No. BC277555), alleging that Ho had mismanaged HHI. Ho and HHI filed a cross-complaint against Hsieh, alleging that Hsieh had defrauded Ho and HHI and breached his fiduciary duties to HHI in connection with the loan transaction. Chung was not a party to that litigation, nor did she testify.

The 2002 action was tried to a referee, who sided with Ho and HHI. The referee found Hseih had set up the refinancing loan to benefit himself and defraud HHI and Ho, and had concealed the true nature of the arrangements from Ho. The referee concluded

4

Hsieh had damaged Ho by at least the amount Ho had paid toward the loan, which was $1,512,322.50, commenting that it was likely that other damages had been incurred, but Hsieh's discovery abuses had prevented specific determination of those amounts. The referee also found Hsieh liable for punitive damages in the amount of $6 million, based on Hsieh's discovery abuses, malicious conduct, and wealth. The trial court accepted the referee's findings, and on January 18, 2005, it entered a judgment in favor of Ho totaling $8,293,534.40 (including compensatory and punitive damages, prejudgment interest, attorney's fees, and JAMS fees), plus other unspecified costs of suit. The Second District Court of Appeal affirmed the trial court's judgment. (*Hseih v. Ho*, *supra*, case No. B182550.)

In June 2006, HHI initiated the present lawsuit by suing Chung to quiet title in the golf course and for declaratory relief. Chung filed a cross-complaint against HHI and Ho for judicial foreclosure, foreclosure on equitable lien, unjust enrichment, and fraud. HHI and Ho filed a third party cross-complaint against Hsieh for equitable indemnity, contribution, declaratory relief, and implied contractual indemnity. The trial court granted Ho and HHI's motion for judgment on the pleadings and/or summary adjudication with respect to their quiet title claims and Chung's cross-claims. We reversed the trial court's judgment.

Both sides later amended their pleadings. The first amended complaint names Ho as a plaintiff, along with HHI, and adds Hsieh as a defendant. The first amended

complaint adds a new cause of action for "Cancellation of Instrument."[3]  Chung's first

amended cross-complaint adds causes of action for breach of contract and breach of the

implied covenant of good faith and fair dealing.

After a five-day bench trial in May and June 2012, the trial court ruled in favor of

plaintiffs in all respects.  Among other things, the trial court determined that no amount

remains due on the loan from Chung to HHI, quieted title in the golf course in favor of

HHI, and found Chung should take nothing on her cross-claims.[4]

## II. DISCUSSION

Defendants disagree with the trial court's conclusion that nothing remains due on

the loan from Chung to HHI.  To the contrary, they contend that the entire $4.5 million

principal balance, plus interest and late fees totaling $8,055,990 as of December 31,

2011, remains unpaid.  We agree with the trial court that HHI owes Chung nothing.

"The most fundamental rule of appellate review is that a judgment is presumed

correct, all intendments and presumptions are indulged in its favor, and ambiguities are

resolved in favor of affirmance.  [Citations.]"  (*City of Santa Maria v. Adam* (2012) 211

Cal.App.4th 266, 286.)  "'In general, in reviewing a judgment based upon a statement of

decision following a bench trial, "any conflict in the evidence or reasonable inferences to

---

[3]  The trial court granted judgment on the pleadings to Chung and Hsieh with respect the cancellation of instrument cause of action.  But the cause of action was reinstated after trial when the trial court granted plaintiffs' motion to conform pleadings to proof.

[4]  Additional facts are discussed below as necessary to address defendants' claims of error.

be drawn from the facts will be resolved in support of the determination of the trial court decision. [Citations.]" [Citation.] In a substantial evidence challenge to a judgment, the appellate court will "consider all of the evidence in the light most favorable to the prevailing party, giving it the benefit of every reasonable inference, and resolving conflicts in support of the [findings]. [Citations.]" [Citation.] We may not reweigh the evidence and are bound by the trial court's credibility determinations. [Citations.] Moreover, findings of fact are liberally construed to support the judgment. [Citation.]'" (*Cuiellette v. City of Los Angeles* (2011) 194 Cal.App.4th 757, 765 (*Cuiellette*).) Questions of law, including the application of the law to undisputed facts, are reviewed de novo. (*Ibid.*)

No matter which standard of review we apply, however, the evidence adequately supports the trial court's finding that "[n]o amount remains due, owing or unpaid" on the loan from Chung to HHI. It is undisputed that, as arranged by Hsieh, BNP loaned $4.5 million to Tonical, which then loaned that amount to Chung, who loaned the same sum in turn to HHI. It is also undisputed that Tonical's debt to BNP has long since been satisfied—at least since May 2003, and perhaps earlier. Neither does Chung owe Tonical anything—when asked whether Chung still owed Tonical money after the BNP-Tonical loan was paid off, Hsieh has previously testified: "No." Though defendants have not explicitly conceded the point, they have not argued in their briefing on appeal that Chung in fact owes Tonical any sum. Moreover, Chung is not out of pocket for the amount necessary to pay off Tonical; she passed on to Tonical partial payments she received from

7

HHI, but made no payments from her own funds. The natural conclusion that follows from these premises is that any further payments Chung might receive from HHI must be something other than recovery of money lent. Put another way: The circumstance HHI was not credited with the payoff of the BNP loan is most reasonably understood as an artifact of Hsieh's previously adjudicated fraud and breach of his fiduciary duties, rather than economic reality.[5] Nothing in law or equity requires us to give effect to Chung's demand for such a windfall.

Defendants contend that plaintiffs are collaterally estopped from arguing that the Chung-HHI loan was satisfied; defendants argue that the matter was already litigated— with the opposite result—in the 2002 lawsuit that resulted in a judgment for fraud against Hsieh. We disagree for several reasons. First, defendants' arguments to the contrary notwithstanding, we are not persuaded that the court in the 2002 action in fact found that HHI owes Chung anything.[6] The referee in that action found, among other things, that Hsieh defrauded Ho by setting up a "scheme" whereby the BNP loan would be paid off— including in part through payments by Ho directly to BNP—but Hsieh would then nevertheless claim, based on Hsieh's improper documentation of the transaction and

---

[5] No doubt, as asserted by defendants, Hsieh and Tonical (which was controlled by Hsieh) did not *intend* that credits towards repayment of the BNP-Tonical loan other than those payments made directly by HHI to Chung be credited to HHI's benefit. We disagree, however, that such intent—previously adjudicated to be *fraudulent* intent, and in breach of Hsieh's fiduciary duties—is dispositive of how we should view the facts.

[6] Indeed, we already observed in our previous opinion in this case that "no finding was made in the underlying action as to 'the true balance remaining on the Chung loan.'"

8

accounting for payments, that HHI still owed Chung a "second balance." If anything, this finding suggests the referee viewed the purported second balance owed not to be an economic reality, but only the intended result of Hsieh's scheme to defraud—in essence, the same conclusion the trial court reached in this action, and which we reach above. To the extent that excerpts of the referee's decision, taken in isolation, may be read as defendants have urged, this would appear to be no more than ambiguity or infelicity, rather than substantive ruling.

Second, even if we were to accept defendant's interpretation of the referee's statement of decision, we would disagree that we should give preclusive effect to the purported determination that the Chung-HHI loan remained outstanding as of the time judgment was entered in the 2002 lawsuit. "'"In order for the determination of an issue to be given preclusive effect, it must have been necessary to a judgment. This requirement 'prevent[s] the incidental or collateral determination of a nonessential issue from precluding reconsideration of that issue in later litigation.' [Citation.] The requirement 'is necessary in the name of procedural fairness, if not due process itself, so that parties to the litigation have sufficient notice and incentive to litigate matters in earlier proceedings which may bind them in subsequent matters.'"' [Citation.] '[A] particular danger of injustice arises when collateral estoppel is invoked by a nonparty to the prior litigation. [Citations.] Such cases require close examination to determine whether nonmutual use of the doctrine is fair and appropriate.' [Citation.]" (*Creative Ventures, LLC v. Jim Ward & Associates* (2011) 195 Cal.App.4th 1430, 1451.)

9

Applying these principles to the present case, and assuming for purposes of argument only that defendants' interpretation of the statement of decision issued in the 2002 action is correct, we find giving preclusive effect to findings in the prior action regarding the status of the Chung-HHI loan would be neither fair nor appropriate. In the 2002 litigation, the referee ruled Hsieh had defrauded Ho by inducing him to contribute approximately $1.5 million of his own money toward payment of the BNP-Tonical loan, which Hsieh then used to generate undetermined, but substantial profits for himself—the precise amount of which was impossible to fix because of Hsieh's discovery abuses—in addition to purporting to require HHI and Ho to repay a "second balance" to Hsieh's daughter-in-law, Chung. As compensatory damages, the court awarded Ho the return of that $1.5 million he was induced by Hsieh to pay under false pretenses. A determination of how much, if anything, remains due and owing on the Chung-HHI loan is hardly necessary to reach such a judgment. And indeed, nothing about the judgment issued following the referee's statement of decision supports the notion that HHI's rights vis-à-vis Chung—who was not a party to the action—were adjudicated at all, let alone that the court necessarily ruled HHI owed Chung any sum.

Defendants also make much of our previous opinion in this case, which reversed the trial court's previous grant of judgment in favor of plaintiffs. In that opinion, among other things, we rejected *plaintiffs'* collateral estoppel arguments based on the 2002 action. Plaintiffs asserted that the collateral estoppel effect of the 2002 action entitled them to have any liens on the golf course property extinguished; we disagreed. In the

course of disagreeing, in a section entitled "*Issues Determined in Prior Action*," we commented as follows: "HHI and Ho have made no assertion and have pointed to no evidence that *they* made any payments on the Chung loan or the BNP loan other than the $3 million. Rather, they assert that the $4.5 million loan from BNP *has been repaid*, without identifying who repaid that loan." (Orig. italics.)

Defendants glean from this comment a broad holding that "payments to BNP may be credited against the Chung loan only if the payments were made *by [Plaintiffs]*." (Orig. italics.) But, taken in context, we neither stated nor implied any such thing. Rather, we made a simple observation: that the payments by HHI established as a matter of fact in the prior action, and which could potentially be given preclusive effect under the doctrine of collateral estoppel, totaled less than the principal amount of the Chung-HHI loan, and though the BNP loan had been repaid, nothing established who paid it off. These limited findings of fact in the prior case were insufficient to support the conclusion—then urged by plaintiffs—that the collateral estoppel effect of the 2002 action entitled them to the remedy of rescission.[7] We therefore continued by noting that "no finding was made in the underlying action as to 'the true balance remaining on the Chung loan,'" and held that "[b]ecause the issue of restoration of benefits was not addressed in the underlying action, the collateral estoppel doctrine does not apply." This

---

[7] For example, the facts as found in the prior action left open the possibility that Chung had repaid the balance of the BNP loan, and therefore continued to suffer a hole in her personal balance sheet, pending further payments from HHI. In such a circumstance, it would have been inequitable to extinguish Chung's security interest.

holding is in no way inconsistent with the findings in the trial court's statement of decision, or our discussion above agreeing with the trial court's conclusion that HHI owes Chung nothing.

Defendants further argue that the trial court's judgment would result in a "double recovery and an inequitable windfall" for plaintiffs, in light of the judgment in favor of Ho, compensating him for Hsieh's fraud. Not so. If and when Hsieh satisfies that judgment, he may well be entitled, in his role as an owner of HHI, to credit for having contributed an additional sum (the approximately $1.5 million in compensatory damages) towards the payoff of the $4.5 million refinancing indebtedness on behalf of HHI. This issue, however, is a matter of accounting to be resolved between and among the four owners of HHI. It does not implicate the doctrine of election of remedies, as defendants would have it, it has nothing to do with whether HHI owes Chung any sum, and it does not tend to demonstrate that HHI has somehow been the beneficiary of a windfall.

Finally, defendants complain that the trial court should not have opined on issues of agency and alter ego in its statement of opinion, because its findings regarding agency and alter ego were irrelevant to the judgment, in addition to being incorrect. This argument, however, defeats itself: "In reviewing a trial court's decision, we review the result, not the reasoning." (*Florio v. Lau* (1998) 68 Cal.App.4th 637, 653.) Our discussion above, agreeing with the judgment reached by the trial court, does not require us to resolve issues of agency or alter ego. We therefore decline to opine on whether the trial court's reasoning on such issues in its statement of decision was correct.

12

## III. DISPOSITION

The judgment is affirmed.  HHI and Ho shall recover their costs on appeal.

NOT TO BE PUBLISHED IN OFFICIAL REPORT


                                                    HOLLENHORST 
                                                                      J.

We concur:


        RAMIREZ 
                        P.J.

        MCKINSTER 
                        J.


13